## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### *Southern Division*

| | | |
|---|---|---|
| **NEIL F. LETREN,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Case No.: PWG-15-614** |
| **WELLS FARGO BANK, N.A.,** | * | |
| **Defendant.** | * | |
| | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## MEMORANDUM OPINION AND ORDER

Plaintiff Neil Letren and Defendant Wells Fargo Bank, N.A. ("Wells Fargo") entered into two mortgage loans and Plaintiff co-signed an automobile loan. Letren claims that Wells Fargo later reported these loans as delinquent when they were not.  Compl. ¶ 17, ECF No. 2.  Letren filed "dispute letters" with the credit bureaus, which in turn "forwarded Plaintiff's disputes to [Wells Fargo] for an investigation."  *Id.*  ¶¶ 18–19.  According to Letren, Wells Fargo did not conduct a reasonable investigation in response to his inquiries.  *Id.* ¶ 20.  He filed suit *pro se* against Wells Fargo in the Circuit Court for Prince George's County, alleging that Wells Fargo "fail[ed] to fully and properly investigate the Plaintiff's disputes" over the reporting of these accounts, either willfully or negligently, in violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, specifically § 1681s-2(b)(1)(A) and (B).  *Id.* ¶¶ 20–23.  He also included a count for defamation, claiming that Wells Fargo "intentionally and maliciously made false statements publically about Plaintiff's credit history," by reporting them to the credit bureaus, which informed "other creditors and users of credit information."  *Id.* ¶ 26.

Wells Fargo removed to this Court, ECF No. 1, and then sought leave to file a motion to dismiss for failure to state a claim.  ECF No. 18.  Letren retained counsel, and the parties agreed in an April 8, 2015 conference call that Letren would file an amended complaint to address the deficiencies that Wells Fargo identified, after which Wells Fargo could file its motion to dismiss, if it still had a basis for doing so, and any dismissal of the amended complaint would be with prejudice.  ECF No. 22.  Letren filed his Amended Complaint, adding further detail to his factual allegations, ECF No. 23, and Wells Fargo moved to dismiss, ECF No. 26.  The parties fully briefed the motion, ECF Nos. 26-1, 27, 28.  Additionally, Letren sought leave to file a motion to strike Wells Fargo's Reply or, alternatively, to file a surreply to respond to arguments first raised in Wells Fargo's Reply.  ECF No. 29, 31.  A hearing is not necessary.  *See* Loc. R. 105.6.  To the extent that Wells Fargo raises new arguments in its Reply, I will disregard them.  Letren's letter request to strike the Reply or file a surreply is denied as moot.  Because Letren adequately has stated claims under each count of his Amended Complaint and Walker is not a necessary party, Wells Fargo's motion is denied.

## Standard of Review – Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides for "the dismissal of a complaint if it fails to state a claim upon which relief can be granted."  *Velencia v. Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012).  This Rule's purpose "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  *Id.* (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)).  To that end, the Court bears in mind the requirements of Rule 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) when considering a motion to dismiss pursuant to Rule 12(b)(6).  Specifically, a complaint must contain "a short and

plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678–79. *See Velencia*, 2012 WL 6562764, at *4 (discussing standard from *Iqbal* and *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## Sufficiency of Claims

### Willful violation of the FCRA

The FCRA imposes duties on "furnishers of information upon notice of dispute," including that

> [a]fter receiving notice pursuant to section 1681i(a)(2) . . . of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall--
>
> (A)   conduct an investigation with respect to the disputed information;
>
> (B)   review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title . . . .

15 U.S.C. § 1681s-2(b)(1)(A)–(B).

Wells Fargo argues that, "to state a claim for a *willful* violation of Section 1681s-2(b), Plaintiff must establish that Wells Fargo *failed to investigate* the credit dispute forwarded by the Credit Bureaus . . . ."   Def.'s Mem. 7 (emphasis added) (citing *Akalwadi v. Risk Mgmt. Alternatives, Inc.*, 336 F. Supp. 2d 492, 511 (D. Md. 2004)). As Wells Fargo sees it, Letren's claim fails because he "admits that Wells Fargo investigated the disputed debt (but claims the

investigation was unreasonable)," and unreasonable investigative "steps are sufficient to defeat Plaintiff's claim that Wells Fargo willfully failed to investigate his credit disputes."[1]   *Id.*

Plaintiff contends that, to the contrary, a claim can be stated through an allegation of an unreasonable investigation. Pl.'s Opp'n 2.  This is true:

> "[I]nvestigation[]" is defined as "[a] detailed inquiry or systematic examination." *Am. Heritage Dictionary* 920 (4th ed. 2000); *see Webster's Third New Int'l Dictionary* 1189 (1981) (defining "investigation" as "a searching inquiry"). Thus, the plain meaning of "investigation" clearly requires *some degree of careful inquiry* by creditors. Further, § 1681s–2(b)(1)(A) uses the term "investigation" in the context of articulating a creditor's duties in the consumer dispute process outlined by the FCRA. It would make little sense to conclude that, in creating a system intended to give consumers a means to dispute—and, ultimately, correct—inaccurate information on their credit reports, Congress used the term "investigation" to include superficial, *un*reasonable inquiries by creditors. *Cf. Cahlin v. Gen. Motors Acceptance Corp.,* 936 F.2d 1151, 1160 (11th Cir. 1991) (interpreting analogous statute governing reinvestigations of consumer disputes by credit reporting agencies to require reasonable investigations); *Pinner v. Schmidt,* 805 F.2d 1258, 1262 (5th Cir.1986) (same). We therefore hold that

---

[1] In reply, Wells Fargo insists that it only is questioning the sufficiency of the willfulness allegations and not whether "any investigation whatsoever" defeats a willful violation claim. Def.'s Reply 1–2. This characterization of its argument is not accurate, as Wells Fargo contends that "[a] willful violation requires a failure to investigate, which is not the case here," without addressing the willfulness element of the claim. *See* Def.'s Mem. 7. Because Wells Fargo challenges willfulness for first time in its Reply, I need not consider this argument. *See United States v. Williams*, 445 F.3d 724, 736 n.6 (4th Cir. 2006) (declining to address argument raised for first time in reply brief because it "comes far too late in the day"). Letren's request to strike Wells Fargo's reply as to this argument is denied as moot.

In any event, Letren sufficiently alleged willfulness to survive the motion to dismiss when he alleged:

> Wells Fargo's willfulness is shown by the fact that it reported [one of Letren's home mortgages] as having been discharged in bankruptcy and simultaneously reported that there was still an outstanding balance and monthly payment due, making its reporting inaccurate on its face without the need for any investigation to determine it should have updated or changed its reporting.

Am Compl. ¶ 28. His assertion that, "[r]ather than conducting an actual investigation of Plaintiff's dispute, Wells Fargo conducted an unreasonable investigation when it merely verified identification information and matched the information on the credit reports with the information that Wells Fargo previously reported," *id.* ¶ 22, does not negate his assertion that Wells Fargo's failure to investigate fully was willful.

> § 1681s–2(b)(1) requires creditors, after receiving notice of a consumer dispute from a credit reporting agency, to conduct a *reasonable investigation* of their records to determine whether the disputed information can be verified.

*Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 430–31 (4th Cir. 2004) (emphasis added); *see id.* at 430 n.1 (noting that although "for ease of reference, in this opinion [the Fourth Circuit] used the terms 'creditor' and 'credit reporting agency,'" the "discussion of § 1681s–2(b)(1) and other FCRA provisions applies equally to those who furnish other types of consumer information"). Yet it also is true that *Johnson* did not address claims of willful violations, and *Akalwadi*, which did address willful violations, held: "To prevail on a willful noncompliance claim and recover punitive damages, [plaintiff] must show that [defendant] knowingly and intentionally *did not investigat*e the disputed debt in conscious disregard for his rights." 336 F. Supp. 2d at 511 (emphasis added). But in *Akalwadi*, this Court also observed that, while "[n]othing in the language of the FCRA indicates the level of investigation required under § 1681s–2(b)(1)," the *Johnson* Court imposed a "'reasonable investigation'" requirement. *Id.* at 510 (quoting *Johnson*, 357 F.3d at 431); *Davenport v. Sallie Mae, Inc.*, No. CIV. PJM 12-1475, 2015 WL 3604820, at *4 (D. Md. June 5, 2015) (stating that, "to bring a claim under § 1681s–2(b) of the FCRA, [plaintiff] must establish: . . . (3) that [the furnisher] then *failed to investigate* and modify the inaccurate information," but also stating that the question is "whether [the] furnisher conducted a *reasonable* investigation" (emphases added)), *aff'd*, 623 F. App'x 94 (4th Cir. 2015). This Court stated:

> In determining whether a furnisher's investigation is reasonable, the fact-finder should weigh "the cost of verifying the accuracy of the information versus the possible harm of reporting inaccurate information." *See Johnson,* 357 F.3d at 432. It is generally a question of fact for the jury as to whether a reasonable investigation was conducted.

*Akalwadi*, 336 F. Supp. 2d at 510. Thus, a willful violation claim can be based on an unreasonable investigation, which is tantamount to a failure to investigate. *See id.*; *Johnson*, 357

F.3d at 431.  It is undisputed that Letren alleged an unreasonable investigation.  Compl. ¶¶ 22, 25, 26; Def.'s Mem. 7.  Therefore, Letren's claim for a willful violation of the FCRA is sufficient to withstand Wells Fargo's motion to dismiss.  *See Akalwadi*, 336 F. Supp. 2d at 510; *Johnson*, 357 F.3d at 431.

## Negligent violation of the FCRA

Actual damages, but not punitive damages, are available for negligent violation of the FCRA.  *See* 15 U.S.C. § 1681o(a)(1); *see Martin v. Fair Collections & Outsourcing, Inc.*, No. GJH-14-3191, 2015 WL 4064970, at *4 (D. Md. June 30, 2015).  Therefore, to state a claim for negligent violation of the FCRA, Letren must allege actual damages.  *See Martin*, 2015 WL 4064970, at *4; *Buechler v. Keyco, Inc.*, No. WDQ-09-2948, 2010 WL 1664226, at *2 (D. Md. Apr. 22, 2010) (stating that plaintiff who did not allege actual damages only could recover for a *willful* violation of the FCRA, by proving willfulness).  "Actual damages may include economic damages, as well as damages for humiliation and mental distress." *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 239 (4th Cir. 2009) (citing *Sloane v. Equifax Info. Servs.,* 510 F.3d 495, 500 (4th Cir. 2007)).  They also may include loss of credit opportunity.  *See Robinson*, 560 F.3d at 240.

Letren claims that he "suffered actual damages including . . . credit damage, credit denial, los[s] of credit opportunity, pecuniary costs and expenses related to alternative financing, damage to reputation, embarrassment, headaches, sleeplessness, humiliation and other emotional and mental distress." Am. Compl. ¶ 29.  According to Wells Fargo, Letren fails to state a claim for negligent violation of the FCRA because he offers only these "conclusory allegation[s]," without "any factual detail about how he sustained the above damages or how his alleged damages are connected to Wells Fargo's purported negligent violation of FCRA Section 1681s-

2(b)."  Def.'s Mem. 8. Letren disagrees, insisting that his allegations are sufficient.  Pl.'s Opp'n

8.

Neither party cites any biding authority for the level of specificity required to meet the

pleading standard for actual damages under the FCRA.  Letren insists that the cases Wells Fargo

cites from other districts do not support its position "because none of the plaintiffs in those cases

claimed, as Letren does, that they suffered emotional distress by specifically alleging headaches,

sleeplessness and humiliation—all of which are actual damages," and because none of the cases

involved allegations that "the plaintiff suffered credit denials, lost credit opportunity, expenses

incurred that were related to alternative financing or damage to reputation."  Pl.'s Opp'n 6.

Indeed, in *Haley v. TalentWise, Inc.*, the claim failed because the plaintiff simply "d[id] not

allege damages as a result" of the defendant's alleged negligent violations of the FCRA.  9 F.

Supp. 3d 1188, 1195 (W.D. Wash. 2014).  Similarly, in *Menefee v. City of Country Club Hills*,

No. 08 C 2948, 2008 WL 4696146, at *3 (N.D. Ill. Oct. 23, 2008), the plaintiff "alleged no

actual damages" in conjunction with his FCRA claim. And, in *Ritchie v. Northern Leasing

Systems, Inc*., "the Complaint contain[ed] nothing more than conclusory allegations that Plaintiff

is entitled to actual damages." 14 F. Supp. 3d 229, 240 (S.D.N.Y. 2014).

In *Young v. Harbor Motor Works, Inc*., the plaintiff alleged that his "credit score

decreased," and the court concluded that it did not suffice as actual damages.  No. 7CV0031JVB,

2009 WL 187793, at *5 (N.D. Ind. Jan. 27, 2009) (adopting Dec. 18, 2008 Report &

Recommendation); *see Nowlin v. Avis Budget Group*, No. 11CV511, 2011 WL 7087108, at *2

(M.D.N.C. Dec. 22, 2011) (decrease in credit score not sufficient allegation of damages). Yet, in

*Young*, the court observed that the plaintiff "ha[d] not alleged any actual damages that he

suffered as a consumer flowing from the alleged decrease in credit score *such as that he was*

*denied credit, lost credit, had his credit limits lowered, or was required to pay a higher interest rate for credit*" or "non-pecuniary damage *such as loss of reputation or physical or mental effects*." *Id.* (emphasis added).  Likewise, in *Novak v. Experian Information Solutions, Inc.*, the complaint failed because the plaintiff "merely ma[de] the threadbare allegation that he 'was damaged by these violations'" and "ha[d] not, for example, alleged that he was *denied or lost credit . . . .*" 782 F. Supp. 2d 617, 623 (N.D. Ill. 2011) (emphasis added).  In *Ritchie*, 14 F. Supp. 3d at 240, the Southern District of New York said that "the Complaint need allege only enough facts demonstrating that Plaintiff suffered an injury entitling her to actual damages."

Unlike the plaintiffs in the cases Wells Fargo cites, Letren has alleged more than a decrease in his credit score or general damage by listing many of the specific harms that the Northern District of Illinois identified as actual damages that a consumer may suffer from an FCRA violation.  *See* Am. Compl. ¶ 29.   I find persuasive the Northern District of Illinois's observation in *Johnson v. CGR Services, Inc*.: "The FCRA does not explicitly limit the 'actual damages' recoverable under the statute and Plaintiff does not need to plead her damages with heightened particularity. However, the Complaint needs at least to give the other party some notice as to what her actual damages could possibly be." No. 04 C 2587, 2005 WL 991770, at *2–3 (N.D. Ill. Apr. 7, 2005) (dismissing complaint where plaintiff claimed that she "suffered damages as a result of Defendants' conduct," but did not elaborate, and the court could not "conceive of any damages that Plaintiff has sustained from which the Court could grant relief"). Letren has given Wells Fargo notice of his possible actual damages: "credit denial, los[s] of credit opportunity, pecuniary costs and expenses related to alternative financing, damage to reputation, embarrassment, headaches, sleeplessness, humiliation and other emotional and mental distress." Am. Compl. ¶ 29. Letren's allegations of actual damages are more than a

8

"[t]hreadbare recital[] of the elements," *see Iqbal*, 556 U.S. at 678–79, and are sufficient to survive Wells Fargo's motion to dismiss.  *See Johnson*, 2005 WL 991770, at *2–3; *see also Novak*, 782 F. Supp. 2d at 623; *Young*, 2009 WL 187793, at *5.

### Defamation

Wells Fargo argues that Letren fails to state a claim for common law defamation because "15 U.S.C. § 1681h(e) preempts common law defamation claims against credit furnishers unless the defamation was with malice or willful," and Letren does not sufficiently allege either malice or willfulness. Def.'s Mem. 9–10. Certainly,

> no consumer may bring any action or proceeding in the nature of defamation . . . with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer.

15 U.S.C. § 1681h(e); *see Beuster v. Equifax Info. Servs.*, 435 F. Supp. 2d 471, 479 (D. Md. 2006) (discussing interplay between common law defamation claim and § 1681h(e)). "[E]stablishing willfulness requires showing that a defendant 'knowingly and intentionally committed an act in conscious disregard for the rights of others.'"  *Beuster*, 435 F. Supp. 2d at 479 (quoting *Wiggins v. Equifax Servs., Inc.*, 848 F. Supp. 213, 219 (D.D.C. 1993)).  As for malice, "Plaintiff must allege that a defendant published material while entertaining serious doubts as to the truth of the publication or with a high degree of awareness of probable falsity [or actual knowledge of falsity]."  *Id.* at 480 (citing *Foretich v. Capital Cities/ABC, Inc.*, 37 F.3d 1541, 1551 n.8 (4th Cir. 1994)).  Pursuant to Rule 9(b), "malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. R. Civ. P. 9(b); *see Beuster*, 435

F. Supp. 2d at 480 (citing Rule 9(b); *Hatfill v. N.Y. Times Co.,* 416 F.3d 320, 329 (4th Cir. 2005) (holding that heightened pleading standards do not apply to defamation actions).

> Letren claims:
>
> Wells Fargo's willfulness is shown by the fact that it reported [one of Letren's home mortgages] as having been discharged in bankruptcy and simultaneously reported that there was still an outstanding balance and monthly payment due, making its reporting inaccurate on its face without the need for any investigation to determine it should have updated or changed its reporting.

Am Compl. ¶ 28.  By incorporating this allegation into the defamation claim, *id.* ¶ 32, Letren claims that Wells Fargo acted knowingly and intentionally when it reported an account that it knew had been discharged in bankruptcy as a past due account.  Thus, Letren also sufficiently claims that Wells Fargo knew of the falsity of its report.  Therefore, Letren sufficiently alleged either malice or willfulness to survive Wells Fargo's motion to dismiss his defamation claim. *See Beuster*, 435 F. Supp. 2d at 479–80; Fed. R. Civ. P. 9(b).

## **Necessary and Indispensable Party**

Alternatively, Wells Fargo argues that Gail Walker, who co-signed the auto loan, should be joined or the case should be dismissed because she is not a part of it. Def.'s Mem. 11.  In Wells Fargo's view, Walker is necessary as a party to the auto loan and the one with whom Wells Fargo purportedly communicated about "the credit information for the Car Loan."  *Id.* at 13.  Wells Fargo contends that, if Walker is not joined, it will be exposed to multiple, possibly inconsistent suits.  *Id.*

Pursuant to Fed. R. Civ. P. 12(b)(7), this Court may "dismiss an action for failure to join a party in accordance with Rule 19."  *R-Delight Holding LLC v. Anders*, 246 F.R.D. 496, 498 (D. Md. 2007). In determining whether dismissal is appropriate, the Court first "determines[s] whether the party is 'necessary' to the action pursuant to Rule 19(a)."  *Id.* (citing *Owens-Illinois,*

*Inc. v. Meade*, 186 F.3d 435, 440 (4th Cir. 1999)).  A party is "necessary" and "must be joined" if the party "is subject to service of process," his or her "joinder will not deprive the court of subject-matter jurisdiction," and, "in that person's absence, the court cannot accord complete relief among existing parties."  Fed. R. Civ. P. 19(a)(1)(A).  Then, if the party is necessary but "cannot be joined . . . this Court must then consider whether the party is indispensable pursuant to Rule 19(b) such that the case must be dismissed."  *R-Delight*, 246 F.R.D. at 499 (citing *Owens-Illinois*, 186 F.3d at 440).  The burden is on the defendant to show that a party is necessary and indispensable.  *See id.*

Here, Letren filed suit against Wells Fargo for allegedly reporting two of his real property loans, and an auto loan for which he co-signed with Walker, as delinquent when they were not.  Am. Compl. ¶¶ 12, 19.  With regard to the auto loan, he claims that his "financial obligations . . . were completely satisfied in full by a payment from the insurance company that was insuring the subject automobile," Am. Compl.  ¶ 14, and that a division of Wells Fargo "sent Gail Walker a letter advising her that 'lease or loan account has been satisfied in full,'" *id.* ¶ 15.  Letren claims that, "[a]lthough Wells Fargo updated Gail Walker's credit report to show that the loan account was paid in full, Wells Fargo continued to report the account on Plaintiff's credit report as discharged and/or satisfied for less than the full amount."  *Id.* ¶ 16.

This case easily is distinguished from *D.J. Diamond Imports, LLC v. Silverman Consultants, LLC*, No. WMN-11-2027, 2012 WL 163231, at *3 (D. Md. Jan. 18, 2012), on which Wells Fargo relies.  There, the necessary parties were parties to a contract and a promissory note that were "[a]t the center of th[e] dispute," and this Court observed that "'[i]t is well established that a party to a contract which is the subject of the litigation is considered a necessary party.'"  *Id.* (quoting *Ryan v. Volpone Stamp Co.*, 107 F. Supp. 2d 369, 387 (S.D.N.Y.

2000)).  Here, neither the auto loan itself nor the insurance policy on that loan is at issue in this case.[2]  Rather, the dispute concerns the actions Wells Fargo took (or did not take) when Letren notified it that he disputed its reports concerning his payments under the auto loan.  This dispute does not involve Walker or her rights or obligations under the auto loan or insurance policy, and this Court can "accord complete relief" without bringing Walker into the lawsuit.  *See* Fed. R. Civ. P. 19(a)(1)(A).  Therefore, she is not necessary.  *See id.*  I need not address whether she is indispensable.  *See* Fed. R. Civ. P. 19(b); *R-Delight*, 246 F.R.D. at 499.

## ORDER

Accordingly, it is, this <u>12th</u> day of <u>February</u>, <u>2016</u>, ORDERED that

1.  Wells Fargo's Motion to Dismiss, ECF No. 26, IS DENIED;

2.  Letren's request to strike Wells Fargo's reply or file a Surreply, ECF No. 29, 31, IS DENIED AS MOOT; and

3.  Wells Fargo SHALL FILE AN ANSWER on or before February 29, 2016.

_____/S/_____
Paul W. Grimm
United States District Judge

lyb

---

[2] In reply, Wells Fargo argues for the first time that "Walker may have contractual and legal responsibilities for the outstanding balance of the Car Loan."  Def.'s Reply 5.  This argument was not raised in Defendants' opening brief and therefore I will disregard it.  *See United States v. Williams*, 445 F.3d 724, 736 n.6 (4th Cir. 2006).  Letren's request to strike Wells Fargo's reply as to this argument is denied as moot.  In any event, facts concerning the status of the loan and Walker's obligation under it are appropriate for discovery, if relevant to the claims; they are not a basis for joining Walker.